Kevin C. SADLER, Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF CABOOL SCHOOL DISTRICT R–4, Defendant–Respondent.

No. 18242.

Missouri Court of Appeals,
Southern District,
Division One.

March 31, 1993.

Motion for Rehearing or Transfer Denied April 22, 1993.

Application to Transfer Denied May 25, 1993.

---

5. One of the cases cited in *Bogard* is *State v. Griffin*, 818 S.W.2d 278 (Mo. banc 1991). That opinion was withdrawn and has been reissued with certain corrections. *See State v. Griffin*, 848 S.W.2d 464 (Mo. banc 1993). The jury

Craig A. Smith, Springfield, for plaintiff-appellant.

Virginia L. Fry, Rana L. Faaborg, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-respondent.

SHRUM, Judge.

This declaratory judgment action concerns a contract between the plaintiff, Kevin C. Sadler, a permanent (tenured) [1] teacher and the Board of Education of Cabool School District R–IV (the Board). The 1990–91 contract covered two subjects: (a) The provisions required by statute to be in the "indefinite contract" of every permanent teacher, and (b) language calling for additional pay for extra and extended duties, i.e., coaching and extracurricular jobs. Later, in the plaintiff's 1991–92 contract, the Board eliminated the extra and extended duties and the pay therefor without following § 168.110. The plaintiff then filed this action seeking a determination of his rights under the statute and under the contract and seeking pay for the 1991–92 school year based upon the total compensation figures in the 1990–91 contract.

The trial court found the Board lawfully relieved the plaintiff of his extra and extended duties and denied his claim for compensation above his base salary. The plaintiff appeals from that judgment.

The primary issue is whether the Board could unilaterally eliminate from the plaintiff's 1991–92 contract the non-tenure compensation provisions that were in his 1990–91 contract—leaving intact the base pay provision—without following the procedures for modification prescribed by § 168.-110. Another question raised on appeal—although not presented by the pleadings—is whether a formal vote of the Board was necessary to relieve the plaintiff of his extra and extended duties.

instruction issue for which it was cited in *Bogard* was not affected.

1. In this opinion we use the term *tenured teacher* and *permanent teacher* interchangeably. Section 168.104, RSMo 1986, defines a *permanent* teacher, in pertinent part, as "any teacher.... employed as a teacher in the same school district for five successive years...." All statutory references are to RSMo 1986 unless otherwise cited.

We answer the first question in the affirmative and the second in the negative. We affirm.

## FACTS

The plaintiff was a tenured teacher in the Cabool R–IV school system, working as both a teacher and a coach until the 1991–92 school year. His 1990–91 contract with the Board was substantially in the form

| | |
|---|---:|
| Extended Empl. | $ 3,010 |
| Base Salary | 18,563 |
| Football | 2,135 |
| Girls Basketball | 2,135 |
| Boys Track | 1,021 |
| Off Season Program | 1,392 |
| C–Club | 100 |
| | $28,356 |

required by § 168.108.[2] Included was the provision "that the Teacher,.. beginning on the 9 day of July, 1990, shall serve in the employ of the Board ... for ... 10¾ months ... for an annual compensation for $28,356...." Immediately below the printed portion of the contract and adjacent to the signatures of the parties were the components of the total salary figure and the attendant duties for each salary increment. That list read:

Also in the contract was the following:

It is further agreed by the parties hereto that this contract shall continue in force from year to year, until modified or terminated in accordance with the provisions of the Teacher Tenure Act....[3]

The plaintiff and the Board operated under the foregoing contract for the 1990–91 school year.

By letter from the superintendent's office, the plaintiff was notified in April 1991 that he was being "officially offered a contract" for the 1991–92 school year. In keeping with the practice of earlier years, the letter did not recite a salary figure because of the uncertainty of available funding at that time of the year. Likewise, the letter did not mention what the assigned duties would be.

On April 16, 1991, the plaintiff learned from the school principal that the Board had decided to relieve him of his position as head football coach[4] and that he would not be paid for that position. The plaintiff responded that he was going to look for other positions, but it was late, and if he found nothing, he wanted to know what he was going to coach. His search for other employment was unsuccessful.

On August 19, 1991, the plaintiff received a proposed contract from the Board, a contract which provided for no extra or extended duties and provided for no compensation other than his base salary of $18,536.[5] That figure, $18,536, was the

2. § 168.108 reads:
"Every indefinite contract shall contain the following provisions in substantially the following form:
'It is hereby agreed by and between ......., the teacher, and the Board ... that the teacher, beginning on the.... day of ..........., 19 ..., shall serve in the employ of the Board ... for a term of ........ months ... for an annual compensation of $.....'....
'It is further agreed by the parties hereto that this contract shall continue in force from year to year, until modified or terminated in accordance with the provisions of sections 168.102 to 168.130, RSMo....'"

3. Language required by § 168.108. See footnote 2.

4. The principal testified that she told the plaintiff he was going to be relieved as head football coach and would receive no pay for that position, whereas the plaintiff testified that he was told that he would be relieved "of head football and head basketball" and would be told later what he could coach.

5. The same base pay existed for 1991–92 as for the 1990–91 school year because the Board imposed a salary freeze on everyone on the calen-

salary per the salary schedule for a teacher having six years' service and less than five hours of graduate work. The plaintiff signed the tendered contract "under protest ... reserv[ing] all rights and claims concerning modification, termination or demotion." He then taught as assigned—which did not include coaching or other extra or extended duties—and was paid $18,536 for that work.

By his suit he seeks a declaration that his 1990–91 contract calling for $28,536 salary was not modified or terminated in accordance with the Teachers Tenure Act[6] and was, therefore, valid and enforceable, entitling him to be paid that figure.

In denying his claims, the court included as part of its findings the following: (a) Missouri law does not recognize or authorize the "tenuring" of extra or extended duties; (b) the plaintiff was not demoted as defined in § 168.104; and (c) the additional compensation for extra and extended duties could be added to, deleted from, or modified by the Board at will, and such action, short of modifying the base pay compensation, is not a modification of the teacher employment contract within the meaning of § 168.110. The plaintiff appeals from the judgment denying his claims.

### DISCUSSION AND DECISION

In Point I and in his reply brief, the plaintiff makes two arguments: (A) That action by a school board to modify any contract it has with a tenured teacher, regardless of contract subject matter, must be in accordance with § 168.110;[7] and (B) that the Board here had to comply with § 168.110 before eliminating the extra duties and extra pay provisions from the

plaintiff's 1991–92 contract because of the language in the 1991–90 contract that "this contract shall continue in force from year to year, until modified ... in accordance with the ... Teacher Tenure Act...."[8]

Plaintiff's argument A proceeds as follows. Section 168.104(3) defines an "indefinite contract" as "every contract ... entered into between a school district and a permanent teacher." Section 168.110 constrains a board in modifying "an indefinite contract" by requiring that it be done on or before April 15 and then only as to (a) the beginning date and length of the next school year, and (b) the annual compensation for the upcoming year "as provided by a salary schedule ... applicable to all teachers." Because the extra and extended duty provisions constituted a contract between the plaintiff (a permanent teacher) and the Board, it has to be an "indefinite contract" within the meaning of the Teacher Tenure Act and can be modified only as prescribed by § 168.110.

■ We disagree. That argument ignores other provisions of the Teacher Tenure Act that clearly restrict the term "indefinite contract" to a more narrow meaning than that ascribed to it by the plaintiff. For instance, the term "permanent teacher" is defined by § 168.104(4) as "any teacher who has been employed or who is hereafter employed *as a teacher* in the same ... district for five successive years." Placing the statutory definition of "permanent teacher" into § 168.104(3) demonstrates that the term "indefinite contract" as used in the act means "any contract" with "any teacher *who has been employed.... as a teacher* in the same

dar schedule for the 1991–92 year due to "financial restrictions."

**6.** The "Teacher Tenure Act" is found at §§ 168.102–168.130.

**7.** § 168.110 reads:
"The board of education of a school district may modify an indefinite contract annually on or before the fifteenth day of April in the following particulars:
(1) Determination of the date of beginning and length of the next school year;

(2) Fixing the amount of annual compensation for the following school year as provided by the salary schedule adopted by the board of education applicable to all teachers. The modifications shall be effective at the beginning of the next school year. All teachers affected by the modification shall be furnished written copies of the modifications within thirty days after their adoption by the board of education."

**8.** Argument B is found in both Points I and III of the plaintiff's brief.

school district for five successive years...."

▮ "Teacher" is defined as any school district employee (except a superintendent or assistant superintendent) "regularly required to be certified under laws relating to certification...." § 168.104(7). A "teacher" as used in § 168.104(7) is "an employee holding a position of the type mentioned in § 168.011, that is, a public school position in which the person was employed *to teach.*" *Hudson v. Marshall,* 549 S.W.2d 147, 153[4], 94 A.L.R.3d 127 (Mo.App.1977) (emphasis in original). "Teacher" thus defined does not include a school employee who is certified as a teacher, has tenure as a teacher, signs a teacher's contract, but, nevertheless, does not perform duties as a teacher. 549 S.W.2d at 148–154. Such school district employee is not entitled to the protection of the Teacher Tenure Act. *Id.* 549 S.W.2d at 154.

In § 168.106 the term "indefinite contract" is clearly defined as being a contract between a school district and a "permanent teacher," thereby excluding from its meaning any contract for extra or extended duties. Inserting language from other provisions of the act clarifies § 168.106:

"The contract between a school district and a permanent teacher [an *employee certified as a teacher who has worked as a teacher* for 5 years or more in the same district] shall continue known as an *indefinite contract* and shall be in effect for an indefinite period, subject only to:

. . . .

(2) Modification by a succeeding indefinite contract or contracts in the manner hereinafter provided;

. . . .

(5) Termination by the board ... after a hearing as herein provided. (Emphasis ours.)

Finally, we observe that in § 168.110 one of the constraints imposed on a school board in modifying employee contracts is in "[f]ixing the amount of annual compensation for the following school year as provided by the *salary schedule* adopted by the board ... *applicable to all teachers.*" Use of the defined term "teacher" in § 168.110, as in other provisions, limits its applicability to contracts or contract provisions that cover teaching. When § 168.110 and other provisions of the act herein quoted are read together, it is at once clear that the term "indefinite contract" as defined in § 168.104(3) does not encompass "every contract" with a permanent teacher regardless of its subject matter. Rather, the term "indefinite contract" as used in the act is limited to "every contract" that covers teaching duties. *See generally Hudson,* 549 S.W.2d 147.

▮ Considering all of the act's various provisions, giving the words used in the act their plain and ordinary meaning, and relying upon *Hudson,* 549 S.W.2d 147, we believe that the protection of the Teacher Tenure Act extends to only those provisions in teacher-school district contracts that cover teaching duties—being only those duties that require a teaching certificate. We reject the plaintiff's argument that the term "indefinite contract" in the act refers to *any* contract between a teacher and a school district, regardless of the contract subject matter. We hold that the Teacher Tenure Act did not prevent the Board from unilaterally eliminating from the plaintiff's 1991–92 contract his extra and extended duties and the pay therefor.

▮ Argument B is that the Board had to comply with § 168.110—which they did not do—in order to eliminate the plaintiff's extra duties and extra pay for 1991–92 because in the 1990–91 contract the Board agreed they would do so. He claims *a contractual* right to extra and extended duty pay for 1991–92 because his contract for that year was not modified in accordance with procedures of § 168.110, procedures which he claims the Board agreed by contract to follow with respect to both tenured and non-tenured duties.

We disagree. In sharp contrast with the procedures and safeguards which the General Assembly provided in the Teacher Tenure Act for handling the disputes involving the *teaching* contracts of permanent teachers, the General Assembly has enacted no legislation providing procedures and

grounds for termination or modification of contracts of non-teaching personnel or for termination or modification of the contracts of permanent teachers which cover non-teaching duties. *Kish v. Chilhowee R–IV School Dist.*, 814 S.W.2d 649, 652 (Mo.App. 1991). *See Hudson*, 549 S.W.2d at 153–54. All that is required for school board contracts covering non-teaching duties is that they be in writing: "[S]uch contract [by a school board], including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto." § 432.070. *See Hoevelman v. Reorganized Sch. Dist. R2 of Crawford County*, 452 S.W.2d 298, 301 (Mo.App. 1970).

Here, compliance with § 432.070 for the 1990–91 contract occurred when the parties signed a form [9] mandated by § 168.108 to cover the duties to be performed by the plaintiff as a certified teacher, to which was added the terms of the plaintiff's extra and extended employment. The contract terms governing the two employments were in one instrument—no separate writing was prepared for the non-teacher employment.[10] Yet, it was so written that the subject matter of each contract was kept divisible, the consideration was apportioned between the two employments, and it contained the following provision:

> It is hereby mutually agreed by and between the Teacher and the Board that nothing herein contained shall operate or be construed as a waiver of the rights, powers, privileges or duties of either party hereto by or under the laws of the State of Missouri.

■ In making argument B, the plaintiff would apparently have us look only to the § 168.108 provision of the contract, apply it to both employments, and ignore the "non-waiver" provision of the contract. This we decline to do. If a contract promises something at one point and takes it away at another, there is an ambiguity or conflict. *Behr v. Blue Cross Hosp. Service, Inc.*, 715 S.W.2d 251, 256[5] (Mo. banc 1986). Here, the contract provision mandated by § 168.108, when read in isolation, appears to require the Board to adhere to the Teacher Tenure Act as to all aspects of the contract; however, the "non-waiver" provision tends to negate that requirement for the Board in its handling of the non-teaching employment contract, leaving the Board free to exercise its broader power to modify or eliminate the extra and extended duty contract in a more summary fashion. These two requirements are inconsistent. Being reasonably susceptible of two interpretations, the contract is ambiguous. *Robson v. United Pacific Ins. Co.*, 391 S.W.2d 855, 861 (Mo.1965); *Minden v. Otis Elevator Co.*, 793 S.W.2d 461, 464[7] (Mo. App.1990).

■ Having found the contract to be ambiguous, certain rules become applicable as ancillary rules of construction.[11] *Robson*, 391 S.W.2d at 861. Such rules are not inflexible, the cardinal principle being to determine the intent of the parties. *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362[5] (Mo. banc 1991); *Life Ins. Co. of North America v. McCune*, 776 S.W.2d 401, 404[5] (Mo.App.1989). In determining their intent, the construction placed on an agreement by the parties over time will be given great weight. *Robson*, 391 S.W.2d at 861; *Mal Spinrad of St. Louis, Inc. v. Karman, Inc.*, 690 S.W.2d 460, 463 (Mo. App.1985). Moreover, unless a contract provides otherwise, the law applicable thereto at the time and place of its making,

---

**9.** Printed at the top of the form is the following: "Compliance with Section 168.108, RSMo 1978, Indefinite Contract."

**10.** Use of a § 168.108 contract form to establish the parties' respective obligations as to teaching duties and a separate contract for non-teaching duties might better serve school districts and tenured teachers.

**11.** One such rule (that ambiguities should be construed against the drafter of the contract, *see*

*generally* West's Missouri Digest 2d Contracts, key number 155) does not here apply for two reasons: (1) The § 168.108 provisions in the contract were not drafted by the Board they were drafted by the legislature and made mandatory by that body, and (2) the "drafter" rule of construction is to be applied when other means of construction fail. *See Robson*, 391 S.W.2d at 861; *Berman v. Berman*, 701 S.W.2d 781, 788 (Mo.App.1985).

including statutory provisions and judicial precedents, is as much a part of the contract as though it were expressly referred to and incorporated in its terms. *Sharp v. Interstate Motor Freight System,* 442 S.W.2d 939, 945[6] (Mo. banc 1969); *Curators of Central College v. Rose,* 182 S.W.2d 145, 148–49[4] (Mo.1944), *appeal dismissed,* 323 U.S. 678, 65 S.Ct. 269, 89 L.Ed. 550 (1944). *See* 17A C.J.S. *Contracts* § 330 (1963); 17A Am.Jur.2d Contracts § 381 (1991). The reason for this latter rule ordinarily is that it is presumed that the parties had the well settled law of the land in contemplation when the contract was made. 17A C.J.S. Contracts § 330.

█ Before this court, the plaintiff, repeatedly, disavowed any right to tenure as a coach or tenure for the extracurricular activities. Illustrative is the following taken from his reply brief:

> Mr. Sadler is not asking that tenure be recognized for extracurricular activities, and denies again that he seeks tenure as coach. He does claim "permanency" in those extracurricular positions contractually, subject to modification to that contract in conformity with the law.

Neither in the pleadings nor at any other point in this litigation has the plaintiff claimed that the Board was required to adhere to the substantive and procedural safeguards afforded by the Teacher Tenure Act as a prerequisite to terminating his extra and extended duty contract. The § 168.108 contract language requires school board adherence to the Teacher Tenure Act for modification or termination of a contract; no distinction is made. If, because of the language in his 1990–91 contract, the plaintiff was entitled to the act's modification protection for his extracurricular contract, as he contends, it follows that he was entitled to the substantive and procedural protection of the act in the termination of that contract. With such protection, he could not have been terminated from his extra and extended duties except for the causes listed in § 168.114 and then only after service of written charges followed by hearing as required by § 168.116. Yet, from the plaintiff's interpretation of the contract, he did not claim the Teacher Tenure Act's termination protection for his extra and extended duty contract.

We are persuaded by the plaintiff's conduct in disclaiming the termination protection of the Teacher Tenure Act for his extracurricular contract that he originally intended and understood that the § 168.108 contract language applied solely to the teaching portion of his contract and not to the extracurricular portion. We presume that the plaintiff did have in mind the well settled law regarding contracts with school boards when he signed the contract. That includes the well established principle that Missouri school boards have broad powers in contracting with non-certified personnel or with certified teachers for non-teaching positions, powers that are unlimited by the constraints of the Teacher Tenure Act. *See Kish,* 814 S.W.2d at 652. *See also Hudson,* 549 S.W.2d 147.

We find that the parties never intended the § 168.108 language in this contract to apply to the non-teaching portion of this contract. Argument B is rejected. The trial court was correct in its conclusion that the Board lawfully relieved the plaintiff of his extracurricular assignments for 1991–92.

█ Finally, in Point II the plaintiff charges that the trial court erred in finding that the plaintiff was lawfully relieved of his extracurricular duties because of evidence that "a majority of the whole board" did not vote to relieve him of such assignments.

At trial the school principal testified the plaintiff was relieved of his duties as coach as a result of a school board "discussion in closed session"; "[i]t was not a board record decision"; "[it] was a ... [d]iscussion consensus" by the board to terminate him as a coach. The plaintiff uses that testimony to argue that the Board violated § 162.-301.3 by not voting "on the modification" of the plaintiff's contract. § 162.301.3 reads:

> 3. A majority of the board constitutes a quorum for the transaction of business, but no contract shall be let, teacher employed, bill approved or warrant ordered

unless a majority of the whole board votes therefor....

Nothing in the plain language of this statute required a formal vote by the Board for non-renewal of the plaintiff's extracurricular duty contract. The contract for extracurricular services was for a fixed term. When that term expired, no further board action was required *unless* a new contract was to be let. It was the Board's "consensus" not to offer a new contract to the plaintiff for extended and extra duties. § 162.301.3 simply is not applicable in such a situation. We reject Point II.

We affirm.

PARRISH, C.J., and CROW, P.J., concur.