Jeffrey D. MITCHELL,
Plaintiff/Appellant,

v.

BOARD OF EDUCATION OF NORMANDY SCHOOL DISTRICT, et al., Defendants/Respondents.

No. 67568.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 2, 1996.

Denise Jewel Wesley, St. Louis, for appellant.

Melanie Gurley, Thomas A. Mickes, St. Louis, for respondents.

CRAHAN, Presiding Judge.

Jeffrey Mitchell ("Plaintiff") appeals the trial court's order granting summary judgment in favor of defendants on his claims of breach of contract, wrongful termination, and deprivation of both due process and equal protection rights based on the non-renewal of his contract with the Board of Education of Normandy School District ("Board").[1] Plaintiff maintains Board was not entitled to judgment as a matter of law and also raises an issue concerning the taxing of costs against him. We affirm.

---

1. Although Plaintiff also named certain individuals as defendants, his claims all pertain to the action of the Board in refusing to renew his contract. For convenience, we will refer to defendants collectively as the Board.

The facts are not in dispute. Plaintiff commenced his employment for Board as a Vocational Program Coordinator at Normandy High School in August, 1985. Board required that Plaintiff maintain a valid teaching certificate to occupy this position.

Each year from 1985 through 1988, Plaintiff executed a one-page "teacher's contract" of the type required for probationary teachers. In 1989 and again in 1990, Plaintiff executed a one-page "teacher's contract" of the type required for permanent teachers. None of the contracts specified the duties required by the contract. All of the contracts were for a term of eleven months, rather than the nine month time period typically found in teacher's contracts. Plaintiff was provided with a written job description which he acknowledged accurately described his duties and responsibilities of his position as Vocational Program Coordinator. Those duties did not include the regular instruction of students.

According to Plaintiff's deposition, submitted in support of the Board's motion, his most significant duty as Coordinator involved gathering and verifying data regarding student involvement in vocational education programs for which the District received federal funds through the Missouri Department of Elementary and Secondary Education. As part of this responsibility, Plaintiff would go into each vocational classroom once a semester and help the permanently assigned classroom teacher in assisting students in filling out the required "VEDS" forms. After assisting in this data-gathering process, Plaintiff would then review each individual form and verify the data by checking it against the student's permanent record in the counselor's office. He would also input the raw data into the District's computer system. After verifying the data, Plaintiff would then compile it into various categories prescribed by the state and federal governments and submit that compiled information to the appropriate governmental agencies. Plaintiff stated that he considered this "VEDS Documentation" to be the most significant part of his position and that he worked on it daily and without assistance.

During this on-going process of data-gathering and compiling, Plaintiff would "on occasion" go into vocational educational classrooms and talk to students regarding interviewing or employment opportunities. However, Plaintiff did not do this on a regular basis and each of these classrooms had a permanently assigned classroom teacher. Plaintiff also had occasional student contact as a result of his responsibilities with respect to the school's Vocational Assessment Center. The two full-time counselors who are employed in the Center required that approximately six students at any one time be pulled out of their occupational orientation classes to undergo vocational assessment. Plaintiff's responsibilities in this regard were to ensure that students were arriving at the Center as scheduled.

Plaintiff did not have daily contact with students as a result of his position as Coordinator. Much of his contact with students was a result of his additional duties as a basketball coach and through his assigned cafeteria duty.

Plaintiff testified that one of the more significant responsibilities he had as Coordinator was the daily maintenance and repair of equipment used in the vocational programs. Plaintiff was also responsible for keeping an inventory of equipment and supplies for the vocational area. In addition, Plaintiff ordered new equipment as federal grant money became available and was also responsible for ensuring that all equipment purchased with federal funds was properly labeled as such.

As Vocational Program Coordinator, Plaintiff was not evaluated on the basis of classroom performance. Although Plaintiff's evaluations were recorded on a teacher evaluation form, the evaluations clearly indicated that Plaintiff was not being evaluated as a teacher or instructor of students because these areas were inapplicable to Plaintiff's position. Plaintiff conceded that he did not "teach in a traditional classroom setting," nor did he regularly teach or instruct students.

In April of 1991, in the wake of budgetary difficulties, Board informed Plaintiff his contract would not be renewed for the following

school year. Plaintiff did not request a statement of reasons for his termination or a hearing before the Board. In December, 1993, Plaintiff brought this action alleging, *inter alia*, his termination was improper under the Teacher Tenure Act. §§ 168.102–168.130, RSMo.1986.[2] Board moved for summary judgment attaching affidavits and excerpts from Plaintiff's deposition. Plaintiff filed counter-affidavits. The trial court found that there was no genuine issue of material fact. Further, the trial court held that Board was entitled to judgment as a matter of law because the record established that Plaintiff was neither a teacher nor performed the functions of a teacher under the Missouri Teacher Tenure Act while employed by Board.

The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378. The propriety of summary judgment is purely an issue of law and an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

Plaintiff asserts that summary judgment was improper as Board's failure to renew his contract was contrary to the provisions of the Teacher Tenure Act. A school employee who is employed as a "teacher" for five years automatically receives tenure by operation of law. § 168.221. Plaintiff was employed for more than the required five years. It is undisputed that if Plaintiff was a tenured teacher under the Act, Board's decision would have been improper as other school employees with less seniority remained on the job. What is at issue is whether Plaintiff was employed as a "teacher"[3] within the meaning of the Teacher Tenure Act, and is thereby entitled to its protections.

Although the precise issue presented apparently has not been definitively addressed in this district, there is ample authority from the Western and Southern Districts establishing the basic ground rules for invoking the protection of the Teacher Tenure Act. A "teacher" as defined in § 168.104(7) is "an employee holding a position of the type mentioned in § 168.011,[4] that is, a public school position in which the person was employed to teach." *Sadler v. Board of Educ.*, 851 S.W.2d 707, 711 (Mo. App.1993), quoting *Hudson v. Marshall*, 549 S.W.2d 147, 153 (Mo.App.1977). The definition of teacher includes those persons who fill positions with duties which require a teaching certificate. *Hudson*, 549 S.W.2d at 154. An occasional or sporadic assignment of a teacher to non-teaching duties is not disqualifying so long as the usual and customary duties require certification. *Id.* The source of the certification requirement, however, must be the statute, and not merely a requirement of the school board or the employment contract. *Id.* at 152–53. Thus, the duties regularly performed by the employee must be such that the law requires certification for their performance. Teaching in a public school requires certification. § 168.011(1). Therefore, the relevant inquiry is whether Plaintiff's job regularly required that he teach.

The Teacher Tenure Act provides no definition of teaching. In *Hudson*, the court adopted the following definition from Webster's Third International Dictionary: "to cause to know a subject ... to direct as an instructor ... to impart the knowledge of

---

**2.** All further statutory citations refer to RSMo. 1986.

**3.** Section 168.104(7) defines teacher as follows: (7) "teacher" any employee of a school district, except a metropolitan school district, regularly required to be certified under laws relating to the certification of teachers, except superintendents and principals.

**4.** Section 168.011(1) provides:

No person shall be employed to teach in any position in a public school until he has received a valid certificate of license entitling him to teach in that position.

... to direct, instruct or train by precept, example or experience...." *Id.* at 154.

There is no dispute as to the nature of Plaintiff's job duties. Review of Plaintiff's deposition and the affidavits, both pro and con, submitted in conjunction with the motion for summary judgment establishes that they did not include the regular instruction of students. Plaintiff was hired as a Vocational Program Coordinator. In this position, his principal responsibility was the application for and administration of state and federal grant money for the school's vocational program. Plaintiff would also assess the equipment needs of the vocational classes and make appropriate purchases. Twice a year in occupational orientation classes, Plaintiff assisted students with vocational education forms and offered scheduling advice. Plaintiff also occasionally conducted role playing exercises in these classes.

■ Nothing in Plaintiff's description of his duties or in his written job description required the regular teaching of students. Although the Board required Plaintiff to possess and maintain a valid teaching certificate as a condition of his employment, there is nothing in the record that indicates that the Board could not, consistent with the statute, have filled his position with a non-certificated individual. Therefore, as a matter of law, Plaintiff was not a tenured teacher as defined by the Teacher Tenure Act and Board was within its rights in declining to renew his contract.[5]

■ Plaintiff contends that summary judgment was inappropriate, however, because there was evidence that the parties intended that he would gain tenure after five years in the Missouri school system. In support of this assertion, Plaintiff points to the fact that he executed probationary teacher contracts rather than administrative contracts in the early years of his employment and permanent teacher contracts in the later years.

Further, Plaintiff participated in the teacher's pension plan.

In *Hudson*, the plaintiff likewise executed what were denominated as teacher employment contracts, participated in the teacher's retirement program, and was required by the school board to maintain a valid teaching certificate. 549 S.W.2d at 149–54. The court found that these facts were insufficient to bring the plaintiff within the protection of the Teacher Tenure Act because his job duties, principally surveying federal education programs under the Civil Rights Act of 1967 and associated administrative tasks, did not require him to "teach" within the meaning of the statute. *Id.*

The court in *Hudson* went on to point out some of the mischief that would be virtually certain to result if the application of the Teacher Tenure Act could be triggered by the decision of a local school board to require certification as opposed to limiting application of the Act to the performance of duties for which certification is required by state law. *Id.* at 152–53. In our view, basing the applicability of the Teacher Tenure Act on the private agreement or alleged intent of the local school board as opposed to actual job duties would present precisely the same concerns.

In *Inman v. Reorganized School Dist. No. II,* 845 S.W.2d 688 (Mo.App.1993), the court pointed out that the concept of tenure protected by the Act is predicated on the assumption that the individual gaining tenure has exhibited teaching skills and competence for the requisite period as gauged by the local school district. *Id.* at 693–94. If tenure could properly be conferred by private agreement or intent of a local school board without regard to actual performance in instructing students, the underlying premise of the Act would be defeated. Nothing would prevent a school board from extending "per-

5. We have reviewed the affidavits of Robert Boedges, a district collective bargaining representative, Jon Ellefson, a former assistant principal, and Carl Sitze, Director of Classification and Accreditation of Schools, submitted by Plaintiff. In these affidavits, the witnesses set forth their opinions about whether Plaintiff was or should be eligible for tenure. However, the affidavits give no indication that these witnesses' opinions are based on the definition of "teacher" and "teaching" established in the case law,. Further, the issue of whether the duties performed by Plaintiff constituted teaching within the meaning of the Act is purely a question of law, so "expert" opinion on the subject is not binding on the court and does not raise an issue of material fact.

manent teacher" or tenured status to purely clerical, food service or maintenance personnel. Further, one board's agreement to extend such status to non-teaching personnel could ultimately bind boards in other districts to recognize tenured status for individuals who have never exhibited teaching competence for the requisite five year period. *See Hudson,* 549 S.W.2d at 152. Thus, we reject Plaintiff's contentions that the evidence submitted was sufficient to raise a genuine issue of material fact as to the parties' intent to grant tenure and that, as a matter of law, proof of such intent would be sufficient to trigger the protections of the Teacher Tenure Act.

In his second point, which does not comply with Rule 84.04(d), Plaintiff challenges Board's request to include, *inter alia,* attorney's fees, word processing fees and legal research fees in the costs to be taxed in Board's favor. A review of the record shows that the trial court has not yet ruled on Board's proposed bill of costs. Absent any ruling by the trial court on the costs requested by Board, there is nothing for us to review on appeal. Point denied.

■ Finally, Plaintiff contends the trial court erred in granting summary judgment on his equal protection claim against Board. The underlying claim alleges that Board violated Plaintiff's rights under the equal protection clause, U.S. CONST. amend. XIV, § 1, by "recognizing" the tenure status of school employees who were not traditional classroom teachers, while failing to "recognize" the tenure status of Plaintiff. The point relied on, however, does not comply with Rule 84.04(d) because it does not identify what evidence Plaintiff claims would demonstrate that similarly situated individuals were treated differently. See *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978). Further, although Plaintiff cites three cases under this point relied on at the outset of the brief, none of these cases, or any other cases, are mentioned in the argument portion of the brief. Is it not our function to serve as an advocate for either party on appeal. *Id.* at 686. Absent any explanation of how the authorities cited support Plaintiff's contention of error, this is precisely what the brief

implicitly invites us to do. We decline the invitation and hold that Plaintiff's failure to comply with Rule 84.04 and failure to relate the authorities cited to the contention on appeal preserves nothing for review. In the exercise of our discretion, we have reviewed this point for plain error as permitted by Rule 84.13(b). We find no manifest injustice or miscarriage of justice. Point denied.

For the foregoing reasons the judgment of the trial court is affirmed.

CRANDALL and DOWD, JJ., concur.