Mary Louise LONG,
Plaintiff/Respondent,

v.

SCHOOL DISTRICT OF UNIVERSITY
CITY, Defendant/Appellant.

No. 55824.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 30, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 10, 1989.

Michael H. James, Tremayne, Lay, Carr, Bauer & Nouss, Clayton, for defendant/appellant.

Sally E. Barker, Charles A. Werner, Schchat, Cook & Werner, St. Louis, for plaintiff/respondent.

HAMILTON, Judge.

Appellant School District of University City (hereinafter, the District) appeals the judgment of the trial court entered in favor of Respondent Mary Louise Long (hereinafter, Long) in the amount of $3,784 for lost wages and retirement contributions thereon, plus interest. We affirm.

The District has continuously employed Long as an elementary school teacher since the 1958–59 school year. She holds a bachelor's degree in education and a life certification to teach elementary education. In addition, Long qualifies as "permanent teacher" under an "indefinite contract" as defined in the Teacher Tenure Act, Sections 168.104(3) and (4) RSMo.1986.[1]

---

1. Hereinafter all statutory citations refer to the    Teacher Tenure Act RSMo 1986.

The District's Board of Education (hereinafter, the Board) has annually adopted, published, and effected a salary schedule applicable to all of its teachers for the school year. The schedule is formulated upon a grid. The horizontal axis contains five categories or "channels," each corresponding to a separate level of academic training, i.e., bachelor's degree, bachelor's degree plus thirty additional credit hours, master's degree, master's degree plus thirty additional credit hours, master's plus sixty additional credit hours. The vertical axis contains numerous categories or "steps," each corresponding to years of teaching experience. At the intersection of a given channel and step, a salary is specified for a teacher who has attained both the educational level denominated in the channel and the years of teaching specified in the step. During the 1983–84 school year, when Long held a bachelor's degree and had taught for over thirteen years, her annual salary was $26,788, the salary designated at the intersection of the channel for bachelor's degree and Step 13, the highest experience classification. Prior to the 1984–85 school year, the District paid Long a salary commensurate with her academic credentials and her years of teaching experience as specified by the salary schedule.

The District has promulgated policies, rules, and regulations, adopted by the Board, with respect to the terms and conditions of employment. Under District Regulation 4410.1, relating to salary placement and advancement, advancement on the salary schedule results only when a teacher renders better than average service; it is not automatic. That regulation further states that "[s]alary increments may be withheld from any teacher if his contributions do not meet acceptable standards." District regulations, however, set forth no procedures for making that determination.

According to the District's personnel director, the normal progression by a teacher through the salary schedule occurs as a consequence of successful evaluation under District Regulation 4610, the Teacher Evaluation Program. That regulation provides for the District to conduct an annual written evaluation of each tenured teacher no later than February 1 of each year. The evaluation includes a review of the teacher's performance in eighteen categories as well as an overall rating of either "excellent," "good," "needs improvement," or "unsatisfactory." The regulation further provides that any teacher who fails to meet the standards of the profession "should be informed of that shortcoming in sufficient time to regain competence before the annual salary placement."

In January, 1984, Long received an evaluation that rated her overall performance as "G–" and that recommended her re-employment and her placement on the appropriate step of the salary schedule. The evaluator, who was Long's principal, Deborah Holmes (hereinafter, Holmes), noted that, if Long's performance failed generally to improve, it might be necessary to recommend that she receive no raise.

In March, 1984, Holmes recommended, in a letter to the Superintendent of Schools, that Long be issued a statutory warning letter pursuant to Section 168.116. A copy of Holmes' letter was sent to Long.

On April 3, 1984, the Director of Personnel notified Long of her re-employment for the 1984–85 school year.

On April 18, 1984, the Superintendent sent Long a statutory warning letter, advising that her work in the classroom was "incompetent, inefficient and insubordinate" in certain areas. It further stated that, unless prompt and substantial improvements were made in her work, charges might be filed against her to terminate her indefinite contract.

Subsequently, District administrators observed and evaluated Long's performance over a six-week period. During that period, the administrators and Long held conferences to review her performance, the results of the observations, and her efforts to improve.

On June 18, 1984, Holmes recommended to the Superintendent that termination charges be issued against Long. Long received a copy of this recommendation.

Rejecting Holmes' recommendation for termination, the Superintendent instead

recommended to the Board that it hold Long on "step and salary" for the 1984–85 school year at an annual salary of $26,788, the same salary she had received during the 1983–84 school year. The Board adopted the Superintendent's recommendation on August 9, 1984. The District notified Long of the Board's action by letter dated August 10, 1984. Although Long's salary for the 1984–85 school year failed to increase as a consequence of the Board's resolution, the salary paid to other teachers of Long's education and experience at Step 13 of the channel for bachelor's degree on the salary schedule increased to $27,458, pursuant to Board approval.

Under protest, on or about August 27, 1984, Long signed a modification to her contract of employment. She expressly reserved her claims to holding her salary on step. She further protested the Board's actions in a letter dated August 28, 1984.

Between September, 1984, and January, 1985, the District conducted frequent reviews of Long's performance and held conferences with her to discuss her performance. On January 31, 1985, Holmes, in her annual evaluation, recommended that Long be held on step and salary for the 1985–86 school year. She had rated Long as "excellent" in two categories, "good" in eleven, and "needs improvement" in five. Holmes' overall rating of Long was "needs improvement."

In February, 1985, the Superintendent recommended to the Board that Long be held on step and salary for the 1985–86 school year. The Board adopted a salary schedule providing an annual salary of $29,902 for teachers at Step 13 of the channel for bachelor's degree. Thereafter, the Board approved the Superintendent's recommendation that Long be held on step and salary.

Long, again under protest, signed a contract modification providing for an annual salary of $26,788 for the 1985–86 school year. She also requested a hearing before the Board concerning its decision on her salary placement for the 1985–86 school year. Denying her request for a hearing, the Board did offer Long an informal "listening session" before three of its members. Under protest, Long agreed to attend the session, held on July 11, 1985.

At the "listening session," Long received no statement of charges. She was permitted neither to call witnesses on her behalf, to subpoena witnesses or documents, nor to confront and cross-examine administrators who recommended she be held at step and salary. No stenographer transcribed the session. Thereafter, the Board reaffirmed its decision to hold Long on step and salary. The Board neither issued findings to support its decision nor afforded Long a right to appeal that decision.

For the 1985–86 school year, the District transferred Long to another elementary school. In her annual evaluation, conducted by a different principal, Long received an overall rating of "good." For the 1986–87 school year, she received the salary designated in the salary schedule for teachers of her experience and education.

Long filed suit in Circuit Court, alleging that the District's two decisions to hold her on step and salary constituted demotions implemented without due process in violation of the Teacher Tenure Act, her contract of employment, and constitutional guarantees. The trial court, on a stipulated record, found that Long had been demoted by the District in violation of the Teacher Tenure Act when it froze her salary in both the 1984–85 and 1985–86 school years.

On appeal, the District contends that the trial court erred (1) in finding that freezing Long's salary constituted a demotion within the meaning of the Teacher Tenure Act, and (2) in finding the District violated the Teacher Tenure Act by failing to provide Long with procedural due process rights pursuant to Sections 168.114 through 168.-120.

■ In its first point, the District argues that freezing a teacher's salary constitutes no demotion; rather, it is a decision by the District not to modify an indefinite contract. Section 168.104(2) of the Teacher Tenure Act defines demotion as

any reduction in salary or transfer to a position carrying a lower salary, except on request of a teacher, other than any change in salary applicable to all teachers or all teachers in a classification....

In *Vilelle v. Reorganized School Dist. No. R–1*, 689 S.W.2d 72 (Mo.App.1985), the court concluded that the failure of a school board to raise one teacher's salary when all other teachers of equal experience and education received a raise constituted a demotion under Section 168.104(2):

> The definition of "demotion" in the Missouri Act means that if the board reduces the pay of all teachers in one classification, no teacher is demoted by reason of the pay reduction. But it also means that if the Board gives an upward "change in salary" which is not applicable to all teachers in one classification, those to whom the change does not apply are demoted by reason of the pay increase of their fellows.

In reaching this result, the *Vilelle* court focused upon the effect of the board's action, not its motivation, in determining whether the plaintiff had suffered a demotion.

Like the school district in *Vilelle*, the District here failed for each of two years to award Long the upward change in salary given colleagues of like experience and education. This action by the District constituted a demotion of Long because its effect was to reduce her salary in relation to that of her colleagues.

Moreover, the District's argument that freezing Long's salary was merely a decision not to modify an indefinite contract is unpersuasive under the facts of this case. On each occasion that it failed to raise Long's salary, the District issued a modification of her contract of employment, which she signed under protest. Long's contract, therefore, was in fact modified at the behest of the District to reflect a reduced salary for the 1984–85 and 1985–86 school years as compared to the salary specified on the salary schedule.

■ The District correctly asserts, however, that no modification occurred pursuant to Section 168.110(2). That is because the District failed to fix Long's salary pursuant to the salary schedule, which is the only salary modification permitted under Section 168.110. Instead, by having Long sign a modification of her contract, the District apparently attempted to act pursuant to Section 168.112, which permits modifications of indefinite contracts by consent of the parties. By signing under protest, however, Long negated any mutual consent. Thus, Long's contract was modified, but not pursuant to statutory authority. Point one is denied.

■ The District next contends the trial court erred in finding that it violated the Teacher Tenure Act by failing to provide Long the procedural due process rights contained in Sections 168.114 through 168.-120.

The Teacher Tenure Act contains two references to demotions: Sections 168.-104(2) which defines the term and Section 168.118. The latter section sets forth the due process required when a hearing is requested on the termination of an indefinite contract. Pursuant to subsection (7) of Section 168.118, that due process extends to decisions by a board of education resulting in the demotion of a permanent teacher:

> The decision of the board of education resulting in the demotion of a permanent teacher or the termination of an indefinite contract shall be by a majority vote of the members of the board of education and the decision shall be made within seven days after the transcript is furnished them. A written copy of the decision shall be furnished the teacher within three days thereafter.

Although the language of the Act has been characterized as ambiguous with respect to demotion, it has nevertheless been construed to subsume demotion into termination:

> A demotion is a change in a teacher's indefinite contract and could be considered as the termination of it. In order to give meaning to that part of the act referring to demotions; to allow the act to accomplish its purpose; and because a

demotion would change a teacher's indefinite contract and thus terminate it, we believe certain demotions are protected by the act.

*Glanville v. Hickory County Reorganized School Dist. No. 1,* 637 S.W.2d 328, 330 (Mo.App.1982). This result is consistent with basic statutory construction and with the remedial purpose of the Teacher Tenure Act "to obtain stability, certainty and permanence of employment on the part of those who have shown fitness for the important profession of teaching and to minimize the part that malice, political or partisan trends, or caprice might play in the employment of teachers." *Id.* We hold the Teacher Tenure Act requires a school district to follow the procedures set forth in Sections 168.114 through 168.120 where a permanent teacher with an indefinite contract is subject to action that may result in a demotion.

■ The District provided Long none of these procedural safeguards. She received no statement of charges and no notice of a hearing upon charges. The District, in fact, denied her request for a hearing, offering instead an informal "listening session" before only three of six Board members. Long was afforded neither an opportunity to call witnesses on her behalf, to subpoena witnesses or documents, nor to confront and cross-examine adversaries. No stenographer transcribed the session. The Board issued no findings in support of its decision nor did it afford Long a right to appeal.

The trial court, therefore, committed no error in finding that the District's failure to implement the due process procedures required under the Teacher Tenure Act violated that act, entitling Long to relief.

The judgment of the trial court is affirmed.

DOWD, P.J., and SIMON, J., concur.