Lyle Keith QUERRY, and Robert
Stuart, et al., Appellants,

v.

STATE HIGHWAY AND TRANS-
PORTATION COMMISSION,
Respondent,

Digital Teleport, Inc., Respondent.

No. WD 59472.

Missouri Court of Appeals,
Western District.

Sept. 4, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 30, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Ronald C. Gladney, St. Louis, for appellant.

Richard S. Brownlee, III, Jefferson City, for respondent Digital Teleport, Inc.

Robert M. Hibbs, Michael C. Rose, Dennis J. Redel, Rich Tiemeyer, Jefferson City, for respondent Missouri Highway and Transportation.

Before THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, Jr., JJ.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

NEWTON, Presiding Judge.

Digital Teleport, Inc. ("DTI") is a Missouri corporation that holds several types of competitive telephone service authority obtainable from the Missouri Public Service Commission under Missouri law, except for private pay phone telephone authority. It is a facilities-based telecommunications public utility. DTI is creating a 20,000 route mile digital fiber optic network comprised of twenty regional rings interconnecting primary, secondary, and tertiary cities in thirty-seven states.

Missouri Highway Transportation Department issued a draft Request for Proposal to a number of certificated telephone companies to solicit interest in the exclusive use of freeway right-of-way for the installation of a fiber optic cable that would be allowed in order to provide Intelligent Vehicle Highway System ("IVHS") capabilities on the freeways in the State of Missouri. In March 1994, the Missouri Highway and Transportation Commission ("MHTC") issued an invitation for bid titled "Fiber Optic Cable on Freeways in Missouri" ("RFP"). On April 1, 1994, MHTC released the final RFP. MHTC offered exclusive location on its right-of-way in exchange for fiber optic communications to be used by MHTC via a system of offsetting charges that would result in no net cost for MHTC. On April 18, 1994, DTI submitted its response to the RFP. DTI's proposal was accepted by MHTC, and, on or about July 29, 1994, MHTC and DTI entered into a Fiber Optic Cable Agreement on Freeways in Missouri Agreement ("Agreement").

---

1. The case was originally decided by the Honorable Byron L. Kinder in the Circuit Court of Cole County. Portions of his Findings of Fact are incorporated without further attribution.

As provided by the Agreement, MHTC granted DTI a forty-year exclusive easement in the Fiber Optic Cable Corridor, which consists of the three-dimensional area above, below, and at ground level, within the metes and bounds description of MHTC's airspace. In exchange, DTI dedicated to MHTC six fiber optic cable strands in the statewide system and the necessary connections, and DTI will maintain them in good operating condition. MHTC will use the six fiber optic cable strands for highway purposes only, in the operation and maintenance of the state highway system in Missouri, and not for commercial use or resale. MHTC intends to use the fiber optic cable strands primarily for Missouri's IVHS statewide network.

Under the Agreement, DTI will own the Fiber Optic Cable System ("FOCS"), which consists of all fiber optic cable, conduits, splices, buildings and enclosures, manholes and hand holes, and optical termination equipment to provide DSI's, OC 3, and OC 12 circuit capacity.[2] Also under the Agreement, MHTC may own the FOCS if DTI abandons the FOCS or sells the FOCS to MHTC.

DTI's exclusive easement in the Fiber Optic Cable Corridor is essentially the same as any other utility that is permitted by MHTC in the utility corridor of roadways on the state highways systems. The major difference between DTI's implementation of the FOCS and other utilities permitted on the MHTC right-of-way was that the FOCS is a statewide utility installation that MHTC permitted. MHTC supervised the construction of the DTI FOCS to the same extent which it supervises other permitted utilities on the MHTC right-of-way. No state, federal, or public funds of any kind have been used in

the construction or maintenance of the FOCS. The actual construction of the FOCS was privately financed exclusively through private equity funding, commercial loans obtained through bank lending arrangements, private placement debts, and internal cash generated through sales of services and dark fiber sales.

Paragraph 27 of the Agreement provided that the Fiber Optic Contractor ("Contractor") and its subcontractors would pay "the prevailing hourly rate for each craft or type of workmen required to execute this project work as determined by the Department of Labor and Industrial Relations of Missouri." Further, the Contractor agreed to comply with minimum wage laws, and "Federal wage rates under the Davis Bacon or other federal acts apply to and govern this Agreement...." On or about November 7, 1994, MHTC and DTI executed a second amendment to the Agreement, which deleted Paragraph 27, "Wage Laws," in its entirety. The new contract stated that it was a service contract, not a public works contract, and, thus, DTI would not be subject to the Missouri Prevailing Wage Law, § 290.210,[3] et seq.

Appellants are officers and representatives of various locals of the International Brotherhood of Electrical Workers ("IBEW"). Pursuant to § 536.150, they filed a "Petition for Declaratory Judgment" in the Circuit Court of Cole County against MHTC and DTI. Appellants sought a declaration that the Agreement was subject to the Missouri Prevailing Wage Law, and that all future similar agreements entered into by MHTC and DTI and other fiber optic contractors of a public works nature involving the installa-

---

**2.** DSI's, OC–3, and OC–12 circuit capacity refer to the operating speed of the fiber optic cable strands.

**3.** Unless otherwise indicated, all statutory references are to RSMo 1994.

tion of fiber optic systems on Missouri Federal Highway rights-of-way are also subject to the Missouri Prevailing Wage Law. Further, appellants prayed that DTI be ordered to pay the appropriate wage rates for all future work under the Agreement in accordance with the Missouri Prevailing Wage Law.

The appellants and the class had no direct involvement with the fiber optic cable project. In fact, the construction of the FOCS was entirely performed by private underground cable contractors totally supervised by DTI construction and engineering staff. The petition stated instead that the appellants were Missouri taxpayers acting on behalf of hundreds of members of several IBEW Locals with offices in Missouri or whose members perform work within the State of Missouri of the type and nature that was the subject of the Agreement between MHTC and DTI.

All parties filed motions for summary judgment. The circuit court granted summary judgment for MHTC and DTI on the grounds that appellants failed to avail themselves of administrative remedies and failed to show that there was an action or decision by MHTC subject to review under Chapter 536. Further, the trial court found, on the merits, that appellants failed to show that under either state or federal law the actual work for which wages were paid is a public works or work done with public funds. This appeal followed.

Appellants raise three points on appeal. First, they argue that the trial court erred in concluding that the actual work for which wages were paid was not a public works as defined in § 290.210(7). They assert that the project consisted of construction for public use or benefit, or construction that was paid for wholly or in part out of public funds. They claim that the original Agreement recognized that the Prevailing Wage Law applied and that six

strands of the fiber optic system were dedicated solely for highway purpose use by MHTC, which therefore constituted a public use or benefit. They maintain that, therefore, the actual payment of public funds was not required, but the conveyance of an exclusive easement in return for the exclusive use of a portion of the fiber optic system constituted the payment in whole or in part of public funds in any event.

Secondly, the appellants assert that the trial court erred in concluding that appellants failed to avail themselves of state administrative remedies. They argue that, under the statutory framework, there is no administrative remedy for determination of violation of the Prevailing Wage Law once a state agency decides that the project is not a public works project. Thus, they contend the remedies available under §§ 290.260 and 290.262 are remedies only to challenge violations of the Prevailing Wage Law or to challenge the wage rates to be followed under an annual wage order once it is determined that the law applies.

Finally, the appellants claim that the trial court erred in determining that there was no action or decision by MHTC subject to review under Chapter 536, the Missouri Administrative Procedure Act (MAPA). They assert that Article 5, § 18 of the Missouri Constitution and § 536.150 afford an affected person the right to challenge an action of a state agency which is without statutory authority. Appellants insist that they are entitled to initiate this challenge because they are taxpayers themselves or represent the interests of taxpayers through the doctrine of virtual representation whose interests have been affected by the erroneous determination of MHTC that the Prevailing Wage Law does not apply to the FOCS.

## LEGAL ANALYSIS

██ Initially, we consider the issue of appellants' standing, which is very closely related to the trial court's finding regarding the lack of an action or decision by MHTC subject to review under Chapter 536, as well as to appellants' third point. "Standing is a threshold requirement. Without it, a court has no power to grant the relief requested." *In re Estate of Scott,* 913 S.W.2d 104, 105 (Mo.App. E.D. 1995). Lack of standing cannot be waived, and we may consider it *sua sponte. State ex rel. Mathewson v. Bd. of Election Comm'rs of St. Louis County,* 841 S.W.2d 633, 634 (Mo. banc 1992).

██ The petition stated that the appellants were Missouri taxpayers acting on behalf of hundreds of members of several IBEW Locals with offices in Missouri or whose members perform work within the State of Missouri of the type and nature that was the subject of the Agreement between MHTC and DTI. In order for appellants to have standing in a representative capacity, "(1) the members must have standing to bring suit in their own right; (2) the interests the association seeks to protect must be germane to its purpose; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit." *Citizens for Rural Pres., Inc. v. Robinett,* 648 S.W.2d 117, 133 (Mo. App. W.D.1982). Therefore, as an element of appellants' representative capacity, as well as appellants' basis for claiming standing in their own right, our inquiry begins with whether the members have standing to bring suit in their own right as taxpayers. For appellants to have standing as taxpayers, they must demonstrate either: (1) a direct expenditure of funds generated through taxation, (2) an increased levy in taxes, or (3) a pecuniary loss attributable to the challenged transaction. *State ex rel. Nixon v.. Am. Tobacco Co., Inc.,* 34 S.W.3d 122, 132 (Mo. banc 2000) (citing *Eastern Missouri Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 47 (Mo. banc 1989)).

██ The authority on the first manner of taxpayer standing is very straightforward. "There can be no question as to the right and legal capacity of a taxpayer to bring and maintain an action for himself and on behalf of all others similarly situated to enjoin the unlawful expenditure of public funds, and in such case, proof of an illegal and unconstitutional expenditure of public funds is sufficient to show private pecuniary injury, because of the taxpayer's equitable ownership of such funds and his liability to replenish any deficiency resulting from the misappropriation." 74 Am. Jur.2d, *Taxpayers' Actions* § 4 n. 78 (1974) (citing *Berghorn v. Reorganized Sch. Dist.,* 364 Mo. 121, 260 S.W.2d 573 (1953)); *see State ex rel. Nixon,* 34 S.W.3d at 132–33; *Missourians for Separation of Church and State v. Robertson,* 592 S.W.2d 825, 837 (Mo.App.1979). However, "this right is denied where the payment of the obligation under the contract will not be made from public funds or from funds raised by taxation." 74 Am.Jur.2d, *Taxpayers' Actions* § 22 (1974) (footnotes omitted). Thus, in order to establish standing under the first option, a Missouri taxpayer needs to show only that his or her taxes went or will go to public funds that have or will be expended due to the challenged action. *Nat'l Solid Waste Mgmt. Assoc. v. Dir. of Dept. of Natural Res.,* 964 S.W.2d 818, 819 (Mo. banc 1998). With regard to the FOCS, the appellants have failed to establish this. The evidence in the record establishes not that there has been a direct expenditure of funds generated through taxation, but, to the contrary, that the project was privately financed. In addition, under the second option avail-

able to appellants, there has been no allegation or proof of an increased levy in taxes due to the FOCS. Therefore, to have standing, appellants must have suffered a pecuniary loss attributable to the second amendment to the Agreement. *See State ex rel. Ryan v. Carnahan*, 960 S.W.2d 549, 550 (Mo.App. E.D.1998); *Hinton v. City of St. Joseph*, 889 S.W.2d 854, 857–58 (Mo. App. W.D.1994).

■ "The private injury that invests standing to a taxpayer, however, is not a purely personal grievance in which other taxpayers have no interest, but an injury shared by the public. The standing to a taxpayer to sue is not to enable a private redress, but to benefit the public." *Health Servs. Mgmt., Inc. v. Mo. Health Facilities Review Comm.*, 791 S.W.2d 732, 735 (Mo. App. W.D.1990). Clearly, the public in general does not share the injury claimed by appellants. Appellants are seeking private redress for an alleged injury shared by its fellow union members. In their response to MHTC's and DTI's motion to dismiss, appellants claimed they sought to challenge MHTC's decision "to unilaterally amend their contract after award." They claimed, in pertinent part:

> The effect of this decision, made after the contract award, to permit the awarded party ... to perform [the] construction work without the requirement to pay the prevailing wage granted to [DTI] an unfair advantage not afforded to other contractors who bid or could have bid the work in question many of which contractors have collective bargaining relations with [Appellant] Local Unions.

4. On appeal, appellants also claim that they are empowered to bring the declaratory judgment action pursuant to Article 5, § 18, of the

\* \* \*

It impacted the parties, including [Appellant] Local Unions because this contract which extends for years effectively allowed for less than a level playing field in the bid process since all parties except [DTI] assumed that the [P]revailing [W]age [L]aw applied and since, after contract award, [DTI] was able to avoid the requirements of said law.

In other words, had everyone known from the outset that the Prevailing Wage Law was not applicable, contractors who may or may not have bid on the project *might* have bid differently, the State *might* have accepted the bid of a contractor that *might* have had collective bargaining relations with one of the locals, and the contractor *might* have hired union workers being represented by appellants to do the job.

We cannot conclude that the action was brought to benefit the public. Rather, the injury complained of by appellants seems quite clearly to be a purely personal grievance in which other taxpayers have no interest. In sum, "the tenor of Appellants' participation is as competitors seeking to avoid competition and not as vindicators of a larger public interest." *Med. Mgmt. of Osage Beach, Inc. v. Mo. Health Facilities Review Comm.*, 904 S.W.2d 291, 298 (Mo. App. W.D.1995). Thus, appellants did not have standing to bring the action as taxpayers. *See State ex rel. Mid–Missouri Limestone, Inc. v. County of Callaway*, 962 S.W.2d 438, 441 (Mo.App. W.D.1998).

■ We next consider whether appellants had standing to bring their action, as they claimed in their petition, pursuant to § 536.150.4 The statute provides, in pertinent part:

Constitution of the State of Missouri, which states in relevant part:
All final decisions, findings, rules and orders on any administrative officer or body

When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, *determining the legal rights, duties or privileges of any person,* including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was *subject to such legal duty, or had such right, or was entitled to such privilege,* and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body,

such discretion lawfully exercised shall not be disturbed.

§ 536.150.1 (emphasis added). For a party to have standing for review under § 536.150, the agency action must directly affect the private rights of the person seeking judicial review. *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.,* 34 S.W.3d 266, 275 (Mo.App. W.D.2000).

■ Neither appellants nor their respective unions did any work on the project; they were strangers to the contract at the time of the second amendment. Assuming *arguendo* that there was an action or decision by MHTC that might otherwise be subject to review under Chapter 536, a predicate that is diametrically opposed to the trial court's finding on this point, the petition made no allegation as to a legally protectible interest of appellants' that was adversely affected or how those rights were affected. As a matter of fact, the closest appellants come to arguing that their rights were affected is when they argue that DTI was granted "an unfair advantage not afforded to other contractors who bid or could have bid the work in question many of which contractors have collective bargaining relations with Appellant Local Unions" or that the Agreement and subsequent amendment "effectively allowed for less than a level playing field in the bid process."[5] Neither of these interests confers standing. "A plaintiff has no right to be free from economic competi-

---

existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record. Unless otherwise provided by law, administrative decisions, findings, rules and orders subject

to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

**5.** Appellants have failed to develop this implication of chicanery.

tion." *Mo. Health Care Ass'n*, 777 S.W.2d at 244. Inasmuch as appellants have not identified any legal duty owed to them that was affected by the amendment, have not articulated any specific right of theirs affected by the amendment, and have not demonstrated that they were entitled to any particular privilege to prevent the amendment of the Agreement, they did not have standing for review under § 536.150.[6]

Furthermore, an assertion of standing as a taxpayer is wholly inconsistent with a claim of standing under § 536.150. On the one hand, the party is claiming an injury that is not a purely personal grievance, while, on the other, the party claims that an agency action directly affected his or her private rights, *i.e.* a purely personal grievance. The two concepts are mutually exclusive, alternative bases of standing. By attempting to create some hybrid basis of standing, appellants have failed to show that they are entitled to turn to the court for review. Unfortunately for appellants, everyone who desires judicial review does not necessarily possess a sufficient legally cognizable interest to satisfy the threshold requirement of standing.

## CONCLUSION

■ "Justiciability is a necessary element of a declaratory judgment action. Standing is an element of justiciability. A party who lacks standing may not seek a declaratory judgment action." *State ex rel. Nixon*, 34 S.W.3d at 132. "Standing requires that a party seeking relief have a legally cognizable interest in the subject matter and that he has a threatened or

actual injury." *E. Mo. Laborers*, 781 S.W.2d at 46.

We recognize that "[p]ublic policy demands a system of checks and balances whereby taxpayers can hold public officials accountable for their acts." *Id.* at 47. Based on the foregoing, however, we find the trial court did not have subject matter jurisdiction over the action because the appellants lacked standing to bring the action. Neither appellants' status as taxpayers, individually or in their representative capacity, nor their status as a class seeking review under § 536.150 will allow standing, and, thus, the trial court's entry of summary judgment was improper. "While Appellant[s'] principled stance on this issue may be admirable, the rules of standing exist to conserve scarce judicial resources...." *State ex rel. Ryan*, 960 S.W.2d at 550–51. Because the Appellants did not have standing to bring the action, we need not address the points on appeal in any greater depth.

Accordingly, this case is reversed and remanded with directions for the trial court to dismiss for lack of subject matter jurisdiction.

Reversed and remanded.

HAROLD L. LOWENSTEIN, Judge and JAMES M. SMART, Jr., Judge, concur.

---

6. We recognize the stock appellants put into their standing as taxpayers when bringing their action for a declaratory judgment, but we think it is entirely inconsistent to suggest that taxpayer status would be sufficient to invoke § 536.150. The two positions do anything but complement one another. On the one hand, appellants claim that the amendment caused an injury shared by the public, and, on the other, they claim that the amendment affected their private rights. While we appreciate appellants' attempt to deputize themselves and compel compliance with the Prevailing Wage Law, *see* § 290.335, under either theory, appellants lack standing.