**SHERWOOD NATIONAL EDUCATION ASSOCIATION, L. Dianne Hon, Gayle R. Wilson, and Darla Zook, Appellants/Respondents,**

v.

**SHERWOOD–CASS R–VIII SCHOOL DISTRICT, Respondent/Appellant.**

Nos. WD 63931, WD 63947.

Missouri Court of Appeals,
Western District.

March 29, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Sally E. Barker, St. Louis, MO, Arguing on behalf of Appellant.

Michael H. James, Chesterfield, MO, Arguing on behalf of Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and EDWIN H. SMITH, JJ.

JAMES M. SMART, JR., Judge.

Certain public school teachers and their teachers' association, Sherwood National Education Association, brought a declaratory judgment action challenging the decision of the Sherwood Cass R–VII School District to pay certain teachers "commitment fees." The plaintiffs contend that such an arrangement exceeds the scope of the District's authority under the Missouri Teacher Tenure Act, §§ 168.104 *et seq.,* RSMo. The plaintiffs requested as relief the granting to all other teachers the same fees. The trial court held that the commitment fee agreements were unlawful but denied plaintiffs' request for monetary relief. The District appealed the trial court's judgment. The plaintiffs cross-appealed the denial of monetary relief. The appeal and cross-appeal are consolidated.

We affirm the judgment of the trial court in all respects.

## Factual Background

The following facts are the stipulated facts upon which the cross motions for summary judgment were submitted.

Plaintiff Sherwood–National Education Association ("SNEA") is a teachers association that advocates for teachers' wages, benefits, and rights. Plaintiff SNEA filed this action on behalf of all its teacher members. The individual plaintiffs, Diane Hon, Gayle Wilson, and Darla Zook, are tenured teachers who have been employed by Defendant Sherwood–Cass School District ("District") from August 1988 to the present.

The District is a Missouri public school district located in Cass County. It is governed by an elected Board of Education. The Board's authority to determine teacher compensation is governed by statute, primarily the Teacher Tenure Act, §§ 168.104, *et seq.*

On or about June 20, 2001, the District's Board of Education adopted a salary schedule for its teachers for the 2001–2002 school year. The schedule provides for base teacher compensation according to defined "steps," i.e., classifications based upon the criteria of level of education and years of experience. The individual plaintiffs are paid at step levels ranging from step 12 to step 25.

The District also adopted an extra duty schedule for the 2001–2002 school year that specified the compensation for teachers who agreed to accept an extra-duty assignment (such as coaching or other extra-curricular activities) in addition to their teaching duties. The extra-duty compensation is also determined according to steps and defined categories of extra-duty assignments.

## Commitment Fees

In June 2001, seven teachers selected by the District were also offered an additional form of compensation for the 2001–2002 school year. This additional form of compensation was called a "commitment fee." Six of these teachers were new to the District for the 2001–2002 school year: Jerri Manning, Shawn Manning, Cathleen Ford, Karen Lasswell, Amy Bancroft, and Jeff Scott. The other teacher given a commitment fee—Jason Riel—had taught in the District since the 1993–1994 school year. The commitment fees paid to these seven teachers were in addition to their base salaries provided for in the salary schedule.

The sum of $2,000 was offered to four teachers, and the sum of $1,000 was offered to three teachers. Five of the seven commitment fee agreements contained the following language:

In recognition of the need for quality teachers, who are committed to students' long term educational needs, the

District is offering a commitment fee of $[applicable amount] to teachers who sign and return their contracts for the 2001–02 school term within ten days, and who complete the 2001–02 and 2002–03 school years. Teachers who accept payment of the commitment fee and who leave the district prior to the end of the 2002–03 contract year will be required to refund the entire commitment fee.

The commitment fee agreements for two other teachers were identical except that their agreements were contingent on their signing and returning their contracts for the 2001–2002 school year "on or by May 31, 2001" (as opposed to "within ten days").

### The Suit

Plaintiffs filed their lawsuit challenging the Board's authority to offer fees to only seven of the teachers who agreed to teach for the 2001–2002 school year and not to the remaining, similarly situated teachers. As relief, Plaintiffs requested that the court declare the commitment fee agreements a violation of the Teacher Tenure Act. Plaintiffs also requested that the court direct that all teachers who did not receive the commitment fees for the 2000–2001 school year be paid a comparable sum to compensate them for the effective demotion they suffered as a result of teaching for less money that school year than the seven teachers who received the commitment fees.

The parties submitted cross-motions for summary judgment on a stipulated record. After oral argument on the motions, the trial court held that the District exceeded the scope of its authority under sections 168.104, .110, .112, .114, and .126 of the Missouri Teacher Tenure Act by entering into the commitment fee agreements. The court declared the commitment fee agreements unenforceable. The court also held that the plaintiffs could not compel the monetary relief it sought. The District appealed this judgment. Plaintiffs cross-appealed the denial of their requested monetary relief.

The District argues on appeal that the court erred in failing to recognize that the commitment fee agreements are valid contracts not covered by the Teacher Tenure Act.

### Legal Analysis

■ The Missouri Constitution, art. IX, § 1(a), provides for the establishment of public schools. Pursuant to this constitutional mandate, the General Assembly enacted various statutes establishing and regulating public schools, including Chapters 160, 161, 162, 163, 164, 165, 167, 168, 170, 171, 177 and 178.[1] Section 162.261 vests the government and control of each District in a Board of Education. The Board is empowered by section 171.011 to make "all needful rules and regulations for the organization, grading and government in the school district."

■ The board of each district legislatively adopts a salary schedule applicable to all teachers prior to the school year. § 168.110; *Vilelle v. Reorg. Sch. Dist. No. 1*, 689 S.W.2d 72, 75 (Mo.App.1985). Section 168.110(2) provides that a school board may modify an indefinite contract by fixing the annual compensation in accordance with the "salary schedule ... applicable to all teachers." The Teacher Tenure Act has as one of its purposes the protection of competent and qualified

---

**1.** Unless otherwise noted, all statutory references are to Revised Statutes of Missouri 2000.

teachers in the security of their positions. *Hirbe v. Hazelwood Sch. Dist.*, 532 S.W.2d 848, 850 (Mo.App.1975). In the exercise of its powers the Board may not act in an unreasonable, arbitrary, capricious or unlawful manner. *Adamick v. Ferguson–Florissant Sch. Dist.*, 483 S.W.2d 629, 632–33 (Mo.App.1972). A tenured teacher has an indefinite contract with the district that may be modified as provided in sections 168.110 and 168.112 or terminated as provided in sections 168.114 to 168.118. *Vilelle*, 689 S.W.2d at 75. Putting these provisions together, we see a purpose within this legislation that all teachers be paid for their teaching duties in accordance with the salary schedule adopted by the district.

In *Vilelle*, 689 S.W.2d at 74–75, a teacher in Benton County brought an action against his employer school district, contending that the district had violated Missouri's Teacher Tenure Act by refusing to pay the plaintiff the same salary it paid other tenured teachers of similar experience and education. Plaintiff became employed by the district in 1972. Before the start of 1981–1982 school year, the district offered to rehire the plaintiff at his 1980–1981 salary, although other teachers were given increases in accordance with the 1981–1982 salary schedule. In subsequent years, the district continued to rehire plaintiff without any increases, although all other teachers received increases. After three years of not being paid under the schedule, plaintiff sued the district for a declaration that he must be paid in accordance with the salary schedule. He argued that the district's action to pay him off the schedule amounted to a demotion in violation of the Act.

The trial court held that the district's action was not illegal because the salary schedules were not binding on the district but were only "guidelines." *Id.* at 75.

The court also held that the district was not required to pay plaintiff more, and that plaintiff accordingly was not demoted within the meaning of the Teacher Tenure Act. *Id.*

This court in *Vilelle* reversed the ruling of the trial court, holding that, whatever the district attempted to call its salary schedules, they were salary schedules "applicable to *all* teachers," in accordance with section 168.110. *Id.* at 76. The court further held that because the district refused to pay the plaintiff in accordance with the schedule, it demoted him within the meaning of section 168.104(2). *Id.* at 78. The court held the district was required to pay plaintiff the difference in salary for all three years he was paid an amount not on the schedule. *Id.*

In *Long v. School District of University City*, 777 S.W.2d 944, 945–47 (Mo.App. 1989), as in *Vilelle*, the school district froze the salary of teacher Mary Louise Long, refusing to move her ahead on step and salary because of dissatisfaction with her performance. However, the district brought no charges against her, and provided her with no contested hearing as to whether she should be demoted or terminated. As in *Vilelle*, the court in *Long* determined that the refusal to advance teacher Long in step and salary amounted to a demotion and was a violation of the Teacher Tenure Act because it was not done in accordance with the procedural requirements of the Act. *Id.* at 947–48.

■ The principles established in the statutes, and illustrated generally by *Vilelle* and *Long*, is that teachers cannot be compensated for their teaching duties in an amount other than what is set forth in the salary schedule without running afoul of the Teacher Tenure Act.

The Sherwood School District here argues, however, that even granted all of the

foregoing, in this case there was no violation of the Act because school districts have the right to enter into contracts for non-teaching duties without reference to the salary schedule. The District says that the commitment fee contracts were not about teaching students, but instead were about other things. The District argues, therefore, that there is nothing improper about the commitment fee contracts.

The District points out that the General Assembly has enacted no legislation providing limitations with regard to contracts of permanent teachers that cover non-teaching duties. *Kish v. Chilhowee R–IV Sch. Dist.*, 814 S.W.2d 649, 652 (Mo.App. 1991). *See also Hudson v. Marshall*, 549 S.W.2d 147, 153 (Mo.App.1977), and *Sadler v. Bd. of Educ. of Cabool Sch. Dist. R–4*, 851 S.W.2d 707 (Mo.App.1993).

In *Sadler*, a tenured teacher asserted that his pay for extra duty (coaching and other extracurricular duties) was subject to the provisions of the Teacher Tenure Act. The teacher argued that such extra duty contracts could not be unilaterally terminated by the school district. In rejecting this argument, the court reasoned that the term "indefinite contract" as defined in section 168.104(3) does not encompass "every contract" with a permanent teacher regardless of its subject matter. *Sadler*, 851 S.W.2d at 711. Rather, the court said, the term "indefinite contract" as used in the act is limited to "every contract" that covers teaching duties (or "those duties that require a teaching certificate"). *Id.*

Similarly, in *Campbell v. Reorganized School District No. 1*, 904 S.W.2d 18 (Mo. App.1995), the court upheld a provision whereby teachers received an extra month of compensation for preparing their classrooms for the coming year. The district in that case had adopted a practice of offering an extra month of compensation to select teachers to prepare the rooms and help with registration. *Id.* at 20. When the district sought to revoke the practice due to financial woes, the teachers sued the district, claiming the extra month could not be unilaterally rescinded because it was essentially part of the teaching contract. *Id.* This court, citing *Sadler*, rejected the argument.

The teachers testified at trial that during the extra month they ordered supplies, prepared their rooms for the ensuing school year, put up bulletin boards and painted signs. They argue that these tasks were performed in preparation for teaching classes and thus became a part of their teaching duties. While the activities are related to teaching, they are not attendant to teaching students. The education of children and not these activities require a teaching certificate. The appellants did not teach students during the extra month, and they were not hired to do so. The Teacher Tenure Act, therefore, does not protect the extra month provision; and the school district was not precluded by section 168.110 from declining to offer the additional month provision to the appellants.

*Id.* at 21–22.

The District here argues that, as in *Campbell*, the commitment fee agreements offered by the Sherwood School District to certain teachers related to the establishment of rights and responsibilities between the parties for *matters separate and apart from teaching duties*. In order to receive the commitment fee, the District points out, the teacher was required to (1) execute the teaching contract within ten days (an obligation not otherwise required of a teacher); (2) commit to remain in the employ of the District for a specified term that was longer than a single school year

(again, an obligation not otherwise required of a teacher); and (3) agree to refund the commitment fees if the teacher left the district. Each of these provisions, argues the District, were related to the establishment of rights and obligations between the parties that were separate and apart from the performance of teaching duties. The School District argues that the execution of the commitment fee agreement essentially waived or modified the right to resign and the right to non-renew. The School District acknowledges these actions "are arguably related to teaching," but says they are not "attendant to teaching students," borrowing language from *Campbell.*

The District's argument is faulty. The argument that the teacher is performing a substantial service to the District by returning the contract promptly is tenuous. There is no showing that the District could not require every teacher to return the contract promptly. Moreover, the District's argument is undercut by the fact that although some of the contracts say "within 10 days," others say "by May 31." [2] Also, we fail to see that the teacher is providing a *non-teaching* service to the district by agreeing to remain employed *as a teacher* by the District for longer than a single year. The way the teacher earns the commitment fee is the same way the teacher earns the basic salary—by continuing to teach students in the district. The "commitment fee agreements" clearly *are* about teaching students. The commitment fee does not relate to any additional non-teaching duties, such as those performed by the teachers in *Campbell.*

The "commitment fee" is simply a way of attempting to compensate certain teachers off the salary schedule *for their teaching duties* in order to induce them to remain with the District. This is not a contract for some extra-curricular duties, such as coaching, doing administrative work, or doing some *Campbell*-like duties. Consequently, we believe this case is distinguishable from *Campbell.* We understand that some teachers are truly deserving of more compensation than their colleagues. It simply is difficult to square the concept of merit pay with the Teacher Tenure Act, which had as one of its purposes the minimization of the part that "malice, political or partisan trends, or caprice" might play in the employment of teachers. *Glanville v. Hickory County Reorg. Sch. Dist.,* 637 S.W.2d 328, 330 (Mo.App.1982). The security and stability that teachers gained under the Act was obtained by trading off certain other things, including, at least to some extent, the right to extra compensation for exceptional competence. We conclude that the trial court did not err in finding the commitment fee contracts to be invalid.

Next, we turn to the issue, on the cross-appeal of the plaintiffs, as to whether the trial court erred in denying the relief requested in the form of additional compensation to all the other teachers.

 First, we note that the District raises an issue as to the standing of the SNEA to seek such relief in behalf of all the teachers. "Standing is a threshold requirement. Without it, a court has no power to grant the relief requested." *Querry v. State Highway & Transp.*

---

**2.** May is a significant month for teacher contracts. As to teachers currently employed by a district, no modifications as to the school year or annual compensation can be made after May 15. Section 168.110. Also, a teacher desiring to terminate a contract at the end of the year is to give notice of intention to do so not later than June 1. Section 168.112. Thus, requiring a teacher to return a contract by May 31 would seem to provide no great assistance to the district.

*Comm'n,* 60 S.W.3d 630, 634 (Mo.App. 2001). "Lack of standing cannot be waived...." *Id.* "Appellate review of whether a litigant has standing is *de novo.*" *Kinder v. Holden,* 92 S.W.3d 793, 803 (Mo.App.2002). "This court determines standing as a matter of law on the basis of the petition, 'along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued.'" *Id.*

SNEA is an unincorporated association, and the individual plaintiffs are members of SNEA. SNEA has alleged, in a conclusory manner, that it has "associational standing to represent the interests of the other teacher members of the SNEA." We do not know how many or what percentage of the teachers who would be affected are members of SNEA.

■■■ Standing is the requisite interest that a person must have in a controversy before the court. *State ex rel. Mo. Health Care Ass'n v. Mo. Health Facilities Review Committee,* 768 S.W.2d 559, 561 (Mo.App.1988), *overruled on other grounds by West County Care Ctr., Inc. v. Mo. Health Facilities Review Committee,* 773 S.W.2d 474 (Mo.App. 1989). A voluntary membership association may have standing in its derivative capacity by seeking judicial relief from injuries to its own rights or in its representative capacity by seeking to vindicate whatever rights its members may enjoy. *Mo. Health Care Ass'n,* 768 S.W.2d at 561. To have standing in its representative capacity, an association must allege that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action that would make out a justiciable case had the members themselves brought suit." *Id.* (*quoting Citizens for Rural Pres., Inc. v. Robinett,* 648 S.W.2d 117, 133 (Mo.App.1982)). An association is permitted to sue on behalf of its members if: (a)

its members have standing to bring suit in their own right; (b) the interests the association seeks to protect are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Mo. Outdoor Adver. Ass'n, Inc. v. Mo. State Highways & Transp. Comm'n,* 826 S.W.2d 342, 344 (Mo. banc 1992); *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.,* 34 S.W.3d 266, 275 (Mo.App.2000).

The District argues that in the present case SNEA cannot establish the third and final part of the test, i.e., that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. The interests sought to be protected are the rights of the individual teachers under the terms of their separate and individual indefinite contracts of employment with the District. SNEA is not a party to an indefinite teaching contract with the District. It appears that the declaration of the rights of individual teachers under the terms of their contracts with the District involves the assertion of claims and requests for relief that require the participation of the individual plaintiffs herein. Even assuming that all the teachers wish to be compensated by an amount equivalent to a "commitment fee," it is not clear what "commitment fee" ($1,000 or $2,000) would be appropriate to each individual teacher. The arguments about how to determine such an amount might put some teachers at odds with other teachers. There would also be potential issues as to whether the commitment fee would apply to any teachers who left the district in the contemplated period, and as to any teachers now deceased. There is no reason here that individual teachers who wish to pursue a claim could not do so in their own names. Because it seems that the claim asserted and the relief requested arguably require

the participation of individual members in the lawsuit, SNEA appears to lack standing.

The trial court, however, was clearly entitled to adjudicate the claims of the individual teachers who are named parties. No argument is made by the District that the individual teachers lacked standing to assert their own claims. Those teachers also argue that the awarding of the commitment fees to seven select teachers constituted a demotion as to them and as to all the other teachers not selected for the commitment fee. They argue that, as in *Vilelle* and *Long,* the proper remedy is to direct the district to compensate all teachers accordingly. Accordingly, whether or not SNEA has standing, the trial court was obligated to adjudicate the identical claims as far as the issue of whether the District had any liability. The trial court determined the District did not have liability, so the issue of what damages or compensation might be due became moot in the trial court. Accordingly, if we affirm the trial court, we need not decide the issue of SNEA's standing.

▬ *Vilelle* and *Long* are distinguishable from this case in that in those cases there was an actual *de facto* demotion of the teacher because he was the only one paid off schedule. The proper remedy for an improper demotion is the restoration of the salary and benefits lost because of the demotion. Where there is no demotion, however, we see no justification for providing equivalent compensation to other teachers who did not receive the commitment fees.

Here, there was no demotion. Because only seven teachers received the commitment fee, there can be no argument that the whole salary schedule was generally shifted to incorporate the commitment fee. Rather, the commitment fees were paid to a sufficiently small number of teachers

that it is reasonable to say that *those* teachers were the ones being paid "off the schedule." *Vilelle* and *Long* thus provide no basis for ordering the district to equally compensate other teachers. Because the teachers lack any authority for their position beyond *Vilelle* and *Long,* and because those cases are distinguishable, we deny the cross-appeal of the teachers. Because of our ruling on the cross-appeal, we need not definitively address and decide the issue of the SNEA's standing, as it is moot.

The judgment is affirmed.

LOWENSTEIN and EDWIN H. SMITH, JJ., concur.